UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U. S. A. vs. RONALD PHILLIP WALLACE             Docket Number: 08-cr-00409-CMA-01

**Petition for Issuance of Summons Due to Violation of Supervised Release**

      COMES NOW, Elizabeth Oppenheimer, probation officer of the court, presenting an official report upon the conduct and attitude of Ronald Phillip Wallace who was placed on supervision by the Honorable Consuelo B. Marshall, in the Central District of California sitting in the court at Los Angeles, California, in Docket No. 04-cr-01376-CBM, on the 12th day of February, 2007, who fixed the period of supervision at five years, and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:

1. The defendant shall not incur new credit charges or open any lines of credit without the approval of the probation officer, unless the defendant is in compliance with the periodic payment obligations imposed pursuant to the Court's judgement and sentence.

2. The defendant shall be employed and the defendant's employment shall be approved by the U.S. Probation Officer.

3. Upon the receipt of any funds received by the defendant or his immediate family or any entities controlled by or affiliated with the defendant, as a result of defendant's work activities or the sale of any of the defendant's assets in excess of his monthly salary, the defendant shall give notice not later than 24 hours after receipt of such funds to his supervising probation officer and shall not dispense such funds within 30 days of their receipt without approval of his supervising U.S. Probation Officer.

4. The defendant is prohibited from employment where he would solicit funds or employment which would permit him to have control over investment funds, to have custody of investment funds or investor funds, and nor may the defendant be a signatory on such accounts, this is accounts of investor funds.

5. The defendant is required to report to the United States Probation Officer monthly all of salary income, interest, dividends, profits, bonuses, or other monies that the defendant should receive or his family should receive.

6. The defendant shall provide the probation officer with access to any and all business records, client lists, other records pertaining to the operation of any business owned in whole or in part by the defendant as directed by the probation officer.

7. The defendant shall provide to the probation officer: 1) a signed release authorizing credit report inquiries; 2) federal and state income tax returns or a signed release authorizing their disclosure and 3) an accurate financial statement with supporting documentation as to all assets, income, and expenses of the defendant. In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the probation officer.

8. The defendant shall maintain one personal checking account. All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses. Records of all other bank accounts, including any business accounts, shall be disclosed to the probation officer upon request.

9. The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the probation officer until all financial obligations imposed by the Court have been satisfied in full.

10. The defendant shall pay restitution in the total amount of $11,240,602.94 in monthly payments of $6,000. The payments shall begin 30 days after the commencement of supervision and this amount may be adjusted, and the Court expects it will be depending upon the defendant's economic circumstances.

**On October 1, 2008, jurisdiction was transferred from the Central District of California to the District of Colorado. The case was assigned to the Honorable Christine M. Arguello and re-designated as Docket No. 08-cr-00409-CMA-01.**

**On June 5, 2009, the defendant's supervised release was revoked. He was sentenced to three (3) months imprisonment to be followed by three (3) years supervised release with all previously imposed special conditions remaining in full force and effect.**

**On September 7, 2009, the defendant's second term of supervised release commenced. On March 12, 2010, a warrant was issued for the defendant in relation to a petition due to violations of supervised release. On June 10, 2010, the defendant's supervised release was revoked. He was sentenced to 9 months imprisonment to be followed by 27 months supervised release. Restitution of $11,240,602.94 was ordered. The Court imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:**

1. The defendant shall not incur new credit charges or open any lines of credit without the approval of the probation officer, unless he is in compliance with the periodic payment obligations imposed pursuant to the court's judgement and sentence. The defendant shall not borrow money from anyone unless approved by the probation officer.

2. The defendant shall be employed and the defendant's employment shall be approved by the U.S. Probation Officer prior to the defendant commencing that employment. The defendant's employer shall pay him by way of a paycheck that denotes hours worked, wages earned, and taxes withheld.

3. Upon the receipt of any funds or any benefits received by the defendant or his immediate family or any entities controlled by or affiliated with the defendant, as a result of defendant's work activities or the sale of any of the defendant's assets in excess of his monthly salary, the defendant shall give notice not later than 24 hours after receipt of such funds to his supervising probation officer and shall not dispense such funds within 30 days of their receipt without approval of his supervising U.S. Probation Officer.

4. The defendant is prohibited from employment where he would solicit funds or employment which would permit him to have control over investment funds, to have custody of investment funds or investor funds, and nor may the defendant be a signatory on such accounts, this is accounts of investor funds.

5. The defendant is required to report to the United States Probation Officer monthly all of salary income, interest, dividends, profits, bonuses, or other monies that the defendant should receive or his family should receive whether directly or indirectly.

6. The defendant shall provide the probation officer with access to any and all business records, client lists, other records pertaining to the operation of any business owned in whole or in part by the defendant as directed by the probation officer.

7. The defendant shall provide to the probation officer: 1) a signed release authorizing credit report inquiries; 2) federal and state income tax returns or a signed release authorizing their disclosure and 3) an accurate financial statement with supporting documentation as to all assets, income, and expenses of the defendant. In addition, the defendant shall not apply for any loan without prior approval of the probation officer, nor shall he accept the benefits of any loans without the approved [sic] of the probation officer.

8. The defendant shall maintain one personal checking account. All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal

        expenses. Records of all other bank accounts, including any business accounts, shall be disclosed to the probation officer upon request.

9.     The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the probation officer until all financial obligations imposed by the Court have been satisfied in full.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

See attachment hereto and herein incorporated by reference.

PRAYING THAT THE COURT WILL ORDER the issuance of a summons for the defendant to appear at a supervised release violation hearing.

                ORDER OF THE COURT

Considered and ordered this ___16th___ day of December, 2011, and ordered filed and made a part of the record in the above case.

*Christine M Arguello* (signature)

Christine M. Arguello
U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.

*s/Elizabeth Oppenheimer*

Elizabeth Oppenheimer
Senior Probation Officer

Place: Denver

Date: December 14, 2011

## ATTACHMENT

The defendant's third term of supervised release commenced on April 8, 2011. On April 12, 2011, the conditions of supervised release were read and explained to the defendant. On that date, he acknowledged in writing that the conditions had been read to him, that he fully understood the conditions, and that he was provided a copy of them.

The defendant has committed the following violations of supervised release:

1. **FAILURE TO FOLLOW INSTRUCTIONS OF PROBATION OFFICER**:

The defendant failed to provide verification of his employment and income for May 2011, June 2011, and July 2011, as required by his supervision conditions and instructed by the probation officer, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On April 12, 2011, I reviewed the special conditions of supervision with the defendant. I advised the defendant that his conditions require that his employer pay him by way of a paycheck that denotes hours worked, wages earned, and taxes withheld. I instructed the defendant to provide, consistent with this, verification of his employment with each monthly written supervision report.

On his monthly written supervision report for May 2011, the defendant reported that he was employed by Powell Theune PC. For May 2011, the defendant reported gross earnings of $1,600 and net earnings of $1,504.85. He provided an account statement from his personal checking account at Colorado State Bank & Trust reflecting a direct deposit from Powell Theune PC on May 27, 2011, of $754.80. The defendant did not provide an earnings statement related to this direct deposit. He did not provide documentation to verify the other reported earnings from Powell Theune PC in May 2011. On June 2, 2011, I asked the defendant about the lack of documentation to verify his May 2011 earnings. The defendant advised he would provide two earnings statements to me that date, but they have not been received. On June 2, 2011, the probation officer again instructed the defendant to provide copies of earnings statements with each written monthly supervision report.

On his monthly written supervision report for June 2011, the defendant reported that he was employed by Powell Theune PC. For June 2011, the defendant reported gross and net earnings of $1,550. The defendant provided a copy of a check payable to him from Powell Theune PC in the amount of $750. The defendant did not provide an earnings statement related to this check. He did not provide documentation to verify the other reported earnings from Powell Theune PC in June 2011.

On his monthly written supervision report for July 2011, the defendant reported that he was employed by Powell Theune PC. For July 2011, the defendant reported gross and net earnings of $360. The defendant reported that his employer paid him the $360 in cash and also paid approximately $695 toward the defendant's bills in lieu of directly paying him this amount as earnings. The defendant's $1,055 of income, therefore, was not paid by paycheck, and he did not receive an earnings statement for this income. The documentation the defendant provided was not sufficient to verify his employment and income and did not comport with the instructions of the probation officer.

2. **FAILURE TO NOTIFY THE PROBATION OFFICER AT LEAST TEN DAYS PRIOR TO ANY CHANGE IN RESIDENCE**:

The defendant failed to notify the probation officer at least ten days prior that he was moving from 1521 Steele Street, Denver, Colorado, to 26 Summit Loop, Apartment A-2, Carbondale, Colorado, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

At commencement of supervision in April 2011, the defendant was living at 1521 Steele Street, Denver, Colorado, residence of his friend and employer, Phil Theune. The probation office approved this residence for the defendant to reside upon his release from the Bureau of Prisons. Between April 2011 and July 2011, the defendant reported that he was living at Mr. Theune's residence but was spending time, primarily on weekends, at the residence of his estranged wife in Carbondale. The last home visit conducted at Mr. Theune's residence was on July 12, 2011. On July 19, 2011, I instructed the defendant to inform the probation office at least 14 days in advance of moving to the western slope of Colorado so arrangements could be made to transfer his supervision to the probation officer in that region. On September 2, 2011, the defendant admitted that as of approximately August 1, 2011, he had been staying the majority of the time at his wife's residence in Carbondale. Although he reportedly stayed in Denver six or seven nights during the month of August 2011, the probation office considers the defendant to have changed residences for supervision purposes on or about August 1, 2011. The defendant did not follow my instruction to provide notice of this change at least 14 days in advance and did not comply with the requirement of his standard supervision conditions to notify our office at least 10 days in advance.

3. **FAILURE TO OBTAIN APPROVAL FROM THE PROBATION OFFICE FOR EMPLOYMENT**:

The defendant failed to obtain approval for contract employment with Ray Wall and/or Bruce Blackwell and/or Imago, LLC in July 2011 and August 2011, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On July 5, 2011, the defendant reported that he was looking into an employment prospect with attorney Ray Wall's real estate development client Bruce Blackwell and Mr. Blackwell's company, Imago, LLC. I instructed the defendant to provide me specifics about the employment opportunity at least 14 days in advance of his intended start date so I could evaluate the proposed employment and approve it if appropriate. On July 12, 2011, the defendant advised me that the employment prospect was developing and that he would have information to submit to me soon for approval. On July 19, 2011, the defendant advised that he was going to start this work the following week and that he would provide me "something in writing asap." On August 3, 2011, the defendant reported that Ray Wall had two projects that the defendant was "on." He advised that he expected to receive income from this work in August 2011 and he indicated that there would be an employment contract by August 23, 2011, related to this work. On September 2, 2011, the defendant reported to the probation office to submit his written monthly supervision report for August 2011 and to meet with me. On his monthly written supervision report for August 2011, the defendant stated that he worked for Ray Wall during August 2011. During our meeting, the defendant informed me that he worked for Ray Wall during August 2011 doing research for real estate development projects. He explained that he performed work on project(s) for Ray Wall's client, Bruce Blackwell, and/or Mr. Blackwell's company, Imago, LLC. On November 10, 2011, the defendant admitted that he engaged in this work from on or about July 4, 2011, through August 2011. The work the defendant engaged in for Ray Wall and/or Bruce Blackwell and/or Imago, LLC during July 2011 and August 2011 was not approved by the probation office prior to his commencing work.

4. **FAILURE TO OBTAIN APPROVAL FROM THE PROBATION OFFICE FOR EMPLOYMENT**:

The defendant failed to inform the probation officer, and obtain approval for, contract employment for Saint Johns Trust in or about July 2011 and August 2011, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On July 5, 2011, the defendant reported was looking into an employment prospect with attorney Ray Wall's real estate development clients. I instructed the defendant to provide me information about the specific employment opportunity at least 14 days in advance of his intended start date so I could evaluate the proposed employment and approve it if

appropriate. On September 2, 2011, the defendant reported to the probation office to submit his written monthly supervision report for August 2011. He reported that he worked for Ray Wall during August 2011 doing research for real estate development projects. With his August 2011 monthly written supervision report, the defendant submitted a copy of a check payable to him by Saint Johns Trust in the amount of $1,700. On September 9, 2011, Ray Wall advised me that Saint Johns Trust is one of Mr. Wall's clients, for whom the defendant had been paid to perform research. On November 10, 2011, the defendant admitted that he engaged in this work in or about July 2011 and August 2011. The work the defendant engaged in for Saint Johns Trust during July 2011 and August 2011 was not approved by the probation office prior to his commencing work.

5. **FAILURE TO FOLLOW INSTRUCTIONS OF PROBATION OFFICER**:

The defendant failed to provide verification of all income and monies received for August 2011, September 2011, and October 2011, as required by his supervision conditions and instructed by the probation officer, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On April 12, 2011, I reviewed the special conditions of supervision with the defendant. I advised the defendant that his conditions require that he report to the probation office monthly all salary income, interest, dividends, profits, bonuses, or other monies he receives. I instructed the defendant to provide, consistent with this, verification of all income and monies received with each monthly written supervision report.

On his monthly written supervision report for August 2011, the defendant reported receiving $2,285.75 in net wages and $300 in other cash inflows, totaling $2,585.75. He provided a copy of a check payable to him by Saint Johns Trust in the amount of $1,700. An account statement for the defendant's Colorado State Bank and Trust personal checking account reflect deposits in his account of $1,400 on August 5, 2011; $200 on August 11, 2011; $450 on August 18, 2011; and $225 on August 23, 2011. The source of these deposits is not reflected on the bank statement. Therefore, the bank statement is not regarded as sufficient verification of income. On September 2, 2011, the defendant reported that Ray Wall made deposits of checks directly into the defendant's bank account for payments for contract work and advised that he would provide verification of this. On December 2, 2011, three months later, the defendant provided copies of checks payable to him in the following amounts and dates: $450 on August 18, 2011, and $225 on August 23, 2011. The checks appear to be signed by Ray Wall, although there is no information on the checks in the payee section. The defendant did not provide full and sufficient verification of the $2,585.75 of reported cash inflows he had for August 2011.

On his monthly written supervision report for September 2011, the defendant reported receiving $900 in cash advances, $350 for independent contractor expenses, and $300 paid on his behalf for restitution, totaling $1,550 in cash inflows. An account statement for the defendant's Colorado State Bank and Trust personal checking account reflect deposits in his account of $500 on September 2, 2011; $500 on September 16, 2011; and $250 on September 22, 2011. The source of these deposits is not reflected on the bank statement. Therefore, the bank statement is not regarded as sufficient verification of income. In documentation the defendant attached to his September 2011 monthly written supervision report, the defendant reported that Ray Wall made deposits directly into the defendant's bank account in September 2011 for payments for contract work and monies for contractor expenses. He advised that verification of this was forthcoming. On December 2, 2011, three months later, the defendant provided copies of checks payable to him in the following amounts and dates: $500 on September 2, 2011, and $250 on September 22, 2011. The checks appear to be signed by Ray Wall, although there is no information on the checks in the payee section. In a document attached to his September 2011 monthly written supervision report, the defendant explained that Ray Wall had one of Mr. Wall's associates pay $300 to the Clerk of the Court for restitution on the defendant's behalf. The defendant did not provide full and sufficient verification of the $1,550 of reported cash inflows he had for September 2011.

On his monthly written supervision report for October 2011, the defendant reported receiving $3,300 for work he performed for Ray Wall/ Imago, LLC in July and August 2011. He reported that this was residual income from that

work. An account statement for the defendant's Colorado State Bank and Trust personal checking account reflect deposits in his account of $300 on October 3, 2011; $400 on October 7, 2011; and $3,000 on October 17, 2011. The source of these deposits for October 3 and October 7 is not reflected on the bank statement. The source of the October 17 deposit is indicated as an electronic transfer from Ray Wall. The bank statement is not regarded as sufficient verification of income. In documentation the defendant attached to his October 2011 monthly written supervision report, the defendant reported that Ray Wall made deposits of $300 and $3000 directly into the defendant's bank account in October 2011 for contract work. On December 2, 2011, the defendant provided copies of a check payable to him in the amount of $300, dated October 1, 2011. The check appears to be signed by Ray Wall, although there is no information on the check in the payee section. The defendant also submitted a copy of a bank document, printed from online banking for a Bank of America account, reflecting a transfer of $3,000 on October 14, 2011, to be delivered on October 17, 2011. It appears that this document was submitted as verification of the $3,000 of residual contractor income the defendant reportedly received in October 2011 from Ray Wall. This document, however, is not regarded as sufficient verification of employment and income. The probation officer does not believe that the defendant has sufficiently provided verification of his reported income from Ray Wall for October 2011.

6. **FAILURE TO FOLLOW INSTRUCTIONS OF PROBATION OFFICER**:

The defendant failed to provide verification of his employment and income from Aspen Country Day School, Aspen, Colorado, for September 2011 and October 2011, as required by his supervision conditions and instructed by the probation officer, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On April 12, 2011, I reviewed the special conditions of supervision with the defendant. I advised the defendant that his conditions require that his employer pay him by way of a paycheck that denotes hours worked, wages earned, and taxes withheld. I instructed the defendant to provide, consistent with this, verification of his employment and income with each monthly written supervision report.

On September 16, 2011, I approved the defendant to work at Aspen Country Day School in the school's kitchen, preparing meals on an as needed basis. In a document he submitted with his September 2011 monthly written supervision report, the defendant advised that although he worked for Aspen Country Day School during September 2011, he had not yet been paid. On November 17, 2011, the defendant provided a copy of a check from Aspen Country Day School, dated September 22, 2011, payable to him in the amount of $547.50. The check indicated that the pay was for work by the defendant from September 6 through September 14, 2011. A time sheet was attached, which indicates that $547.50 are gross wages. No earnings statement was provided to the probation office. Based on what was provided, it does not appear that taxes were withheld. In his October 2011 monthly written supervision report, the defendant reported $992.25 in gross and net earnings from Aspen Country Day School for October. He submitted a copy of a check from the school, dated October 28, 2011, payable to him in the amount of $451.25. No earnings statement was submitted. Based on what was provided, it does not appear that taxes were withheld. No documentation was submitted to reflect the dates or hours worked applicable to the October 28 paycheck. The defendant reported that he could not locate the copy of the second check he was paid in October by the school. The defendant has not provided verification of the balance of his reported earnings from October 2011 at Aspen Country Day School.

7. **FAILURE TO WORK REGULARLY**:

Since approximately July 2011, the defendant has failed to work regularly, which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

At the commencement of supervised release in April 2011, the defendant was employed by Powell Theune PC as an

office assistant. On July 5, 2011, the defendant advised that his employer was going to phase out his position during the month of July for financial reasons. On July 5, 2011, the defendant reported that he was looking into an employment prospect with attorney Ray Wall's real estate development client Bruce Blackwell and Mr. Blackwell's company, Imago, LLC. I instructed the defendant to provide me specifics about the employment opportunity at least 14 days in advance of his intended start date so I could evaluate the proposed employment and approve it if appropriate. On July 12, 2011, the defendant advised me that the employment prospect was developing and that he would have information to submit to me soon for approval. On July 19, 2011, the defendant advised that he was going to start this work the following week and that he would provide me "something in writing asap." On August 3, 2011, the defendant contacted me about the employment prospect with Ray Wall and indicated that there would be an employment contract by August 23, 2011.

On September 2, 2011, the defendant reported to the probation office to submit his written monthly supervision report for August 2011 and to meet with me. The defendant informed me that he worked for Ray Wall during August 2011 doing research for real estate development projects. He explained that he performed work on project(s) for Ray Wall's client, Bruce Blackwell, and/or Mr. Blackwell's company, Imago, LLC. This employment, however had not been approved in advance by the probation officer. The defendant advised that he and Mr. Wall were negotiating a long term employment situation for the defendant. He was unsure whether this employment situation would be structured as him working as an employee of Mr. Blackwell or as a 1099 contractor. I instructed the defendant to submit documentation about the proposed employment by September 9, 2011, so I could evaluate it and approve it if appropriate. Specifically, I instructed the defendant to submit to me a position description or draft contract for 1099 work.

On September 7, 2011, the defendant advised that he had a conference call scheduled that day with Ray Wall and the other related individuals to discuss his prospective employment. On September 9, 2011, the defendant advised me that he had a discussion via telephone with Bruce Blackwell on that date to discuss the prospective employment. He advised that he had a conference call scheduled for September 10, 2011, with Mr. Wall and Mr. Blackwell to further discuss details. On September 9, 2011, the defendant failed to submit documentation about the proposed employment with Ray Wall and/or Bruce Blackwell and/or Imago, LLC as instructed.

On September 14, 2011, the defendant advised that Mr. Wall was going to call me soon to discuss how to structure the defendant's employment so it would be compatible with his supervision conditions. On September 16, 2011, Mr. Wall contacted me and stated that he and Mr. Blackwell were working on a proposal to retain the defendant on a contract basis. He advised, however, that Mr. Blackwell could not yet commit to a contract agreement for financial reasons. He estimated that they would be able to proceed the following week. On September 29, 2011, the defendant advised that he had a conference call scheduled that day with Ray Wall to discuss the details of the contract agreement. On September 30, 2011, the defendant reported that the contract agreement would be finalized on that date. On October 1, 2011, the defendant informed that he would submit a copy of the contract agreement to me on October 3, 2011. On October 4, 2011, the defendant advised that the contract agreement would be finalized on that date. On October 5, 2011, the defendant advised that he would have the contract agreement by October 6, 2011. On October 11, 2011, the defendant advised that he would have the contract agreement by October 12, 2011. On October 13, 2011, the defendant advised that he would have the contract agreement on that date. On October 14, 2011, the defendant advised that he would have the contract agreement on that date.

On October 15, 2011, the defendant submitted a draft 1099 contract agreement for my review and employment approval. The contract was between the defendant and Aspen Silver Water, LLC/Imago, LLC. It was backdated to July 15, 2011. Due to other obligations, I was unable to respond to the defendant about the draft contract until October 25, 2011. On that date, I advised the defendant, in a detailed e-mail, that, after conferring with SUSPO Suzanne Wall Juarez, our office had concerns about the proposed employment that needed to be addressed. On October 27, 2011, the defendant contacted me and stated that Ray Wall would respond to the probation office's concerns. On that date, Mr. Wall contacted me, via e-mail, and provided additional information about the proposed employment for the defendant. Due to other obligations, I was unable to respond further to the defendant about the draft contract until November 10, 2011. On that date, the defendant and I had a lengthy discussion about the proposed contract employment and the probation office's concerns about whether this employment situation would be consistent with the defendant's supervision conditions. We agreed

that the defendant would seek to have the draft contract agreement clarified and revised to better address our office's concerns.

On November 19, 2011, the defendant submitted a revised draft 1099 contract agreement for my review and employment approval. On that date, I contacted Ray Wall via e-mail to request confirmation that the draft contract provided reflects the employment arrangement he has negotiated with the defendant. I also requested verification from Mr. Wall that there is a firm commitment for the defendant to be paid a fixed monthly amount for his work. I made this inquiry given that when the defendant previously was on supervision, there were situations in which the defendant's income from contract work was contingent upon an element of the project, such as real estate sales performance. There were also situations in which he did not receive income promised under the contract due to financial issues of the contractee.

On December 9, 2011, I received a response from Mr. Wall, but he did not address all the concerns about which I inquired on November 19. Due to the lack of information, the probation office has not been able to approve the defendant's proposed employment with Ray Wall and/or Bruce Blackwell and/or Imago, LLC and/or Aspen Silver Water, LLC. This employment prospect has appeared to be the main focus of the defendant's employment search since July 2011. The defendant first informed me in August 2011 that a long term employment situation was being negotiated, but this situation has not come to fruition.

On September 16, 2011, I approved the defendant to work at Aspen Country Day School in the school's kitchen, preparing meals on an as needed basis. The school's kitchen manager advised me that the defendant's hours would be very sporadic. The defendant has submitted copies of two paychecks from Aspen Country Day School, one for work in September 2011 and one for October 2011, totaling $998.75. The probation office does not consider this verified income from Aspen Country Day School to constitute working regularly.

Since August 2011, the defendant has advised me that he was pursuing various other employment situations, such as working in restaurants, in wine shops and for other prior business associates. The defendant has not, however, submitted a request to me to approve any of these situations for employment.