**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 08-cr-00409-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**RONALD PHILIP WALLACE,**

**Defendant.**

_____

**REPORTER'S TRANSCRIPT**
**(Revocation of Supervised Release Hearing)**

_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 1:34 p.m. on the 5th
day of June, 2009, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
LINDA S. KAUFMAN, Assistant U.S. Attorney, 1225 17th St.,
Suite 700, Denver, CO 80202

**FOR THE DEFENDANT:**
EDWARD A. PLUSS, Assistant Federal Public Defender, 633
17th Street, Suite 1000, Denver, CO 80202

1      **JUNE 5, 2009**

2      (Proceedings commence at 1:34 p.m.)

3      THE COURT:  You may be seated.

4      Court calls Case No. 08-cr-409, United States of

5  America v. Ronald Philip Wallace.

6      Counsel, could you enter your appearances for the

7  record.

8      MS. KAUFMAN:  Good afternoon, Your Honor, Linda

9  Kaufman for the United States.

10      MR. PLUSS:  Good afternoon, Your Honor, Edward

11  Pluss, Assistant Federal Public Defender, on behalf of

12  Mr. Wallace, who is present.

13      THE COURT:  Good afternoon.

14      Okay.  We are here today for a hearing on a

15  petition alleging violation of supervised release.

16      Mr. Pluss, would you and Mr. Wallace please

17  approach the podium.

18      Ms. Barnes, would you please swear in the

19  defendant.

20                **RONALD WALLACE**

21  having been first duly sworn, answers questions of the

22  Court as follows:

23      THE COURT:  All right.  Mr. Pluss, does your client

24  intend to admit or deny the allegations of the petition?

25      MR. PLUSS:  Your Honor, he does intend to admit.

1          THE COURT:  Okay.  Al right.  Mr. Wallace, have you

2     received a copy of the petition alleging violation of one

3     or more of the conditions of supervised release?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you read the petition?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you been able to discuss it with

8     your attorney?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Now, you have a number of rights that

11    you will be giving up if you admit the allegations of the

12    petition, and I am going to go through a few of those with

13    you right now.  You have the right to have the truth of

14    the allegations determined at a speedy and public hearing

15    where the burden of proof would be on the Government to

16    establish the violation by a preponderance of the

17    evidence.

18         You have the right to the assistance of counsel at

19    all stages of the proceedings.  You have the right to have

20    counsel appointed for you if you could not afford counsel.

21         At that hearing, you would have the privilege

22    against self-incrimination; that means you would not be

23    required to testify or otherwise give evidence against

24    yourself.  You would also have the right to testify on

25    your own behalf if you want to do so.

 1          At the hearing, you would have the right to

 2   confront and cross-examine witnesses.  You would have the

 3   right to present a defense and use the subpoena power of

 4   the court to compel witnesses to come to court and give

 5   testimony.

 6          Have you discussed these rights with Mr. Pluss?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  Do you have -- do you want any

 9   additional time to discuss these rights with Mr. Pluss?

10          THE DEFENDANT:  No.

11          THE COURT:  All right.  If you were found in

12   violation, you can be returned to -- or you can be

13   sentenced to prison for the remainder of the period of

14   your supervised release or your probation.  If you are

15   found in violation, the Court has the discretion to reject

16   any suggested sentencing range under Chapter 7 of the

17   Policy Statements of the Sentencing Guidelines, and impose

18   a sentence that is greater than the range suggested in

19   Chapter 7 of the Sentencing Guidelines.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And do you understand that Chapter 7,

23   then, is not binding on this Court; which means that I

24   could impose a sentence that is in excess of those ranges

25   suggested by Chapter 7?

1          THE DEFENDANT:  Yes, I understand that.

2          THE COURT:  All right.  With those consequences in

3    mind, then, do you want to give up your right to a hearing

4    on the petition and the constitutional rights that you

5    would have in such a hearing and admit the violations?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Then, as to Allegation 1 of the

8    petition; that you have not paid restitution on a monthly

9    basis, a Grade C violation of probation, do you admit or

10   deny the allegation?

11         THE DEFENDANT:  I admit that.

12         THE COURT:  As to Allegation 2 of the petition,

13   that you have failed to report to the probation officer

14   all of your salary, income, interest, dividends, profits,

15   bonuses or other moneys that you or your family has

16   received, a Grade C violation of probation, do you admit

17   or deny that allegation?  Would you like to review?

18         THE DEFENDANT:  No.  I admit that.  That's fine.

19         THE COURT:  All right.  You were hesitant there.

20   Do you want to review what the allegation is in full?

21         THE DEFENDANT:  Well, no.  The issue I have is just

22   that -- that I suppose I do admit to it because I may not

23   have -- I know I didn't report -- my reporting was poor,

24   to say the least, on my monthly reporting.  Which meant

25   that what I reported was not in very good quality.  And

1  so, consequently, yes, what I reported was probably not

2  accurate, I am sure.

3      So, meaning that, now, the way that it was

4  portrayed, the way you said it, it sounded like I was --

5  that I had made a bunch of income and not reported it.

6  That wasn't the case.  It was more a situation of poor

7  reporting, of just not filing out the reports correctly

8  and not putting the income correctly, not because I was

9  not trying to not report the income but, rather, poorly

10  filling out the reports.  Put it that way.

11      So what I think is one in the same.  So I believe I

12  will admit to that.

13      THE COURT:  Okay.  As to Allegation 3 of the

14  petition; that you failed to provide, actually, I think,

15  your five most recent federal and state income tax

16  returns, a Grade C violation of probation.  Do you admit

17  or deny that allegation?

18      THE DEFENDANT:  I admit that.

19      THE COURT:  As to Allegation 4 of the petition;

20  that you have made false statements to the probation

21  office, a Grade C violation of probation, do you admit or

22  deny that allegation?

23      THE DEFENDANT:  That I made false statements to the

24  probation office?

25      THE COURT:  Yes.  And that you had indicated that

1    you would make your restitution payments on a certain time

2    and then you failed to do so.

3              THE DEFENDANT:  I admit that.

4              THE COURT:  As to Allegation 5 of the petition;

5    that you failed to submit monthly report forms by the 5th

6    of the month, a Grade C violation of probation, do you

7    admit or deny that allegation?

8              THE DEFENDANT:  I admit that.

9              THE COURT:  All right.  Mr. Pluss, do you join in

10   the waivers and stipulate that there is a factual basis

11   for the admission?

12             MR. PLUSS:  I do, Your Honor.

13             THE COURT:  All right.  The Court finds that the

14   defendant has knowingly, voluntarily and intelligently

15   waived his constitutional rights, including his right to a

16   hearing on the violation of supervised release -- or on

17   the violation of probation in this case.  The Court finds

18   that there is a factual basis for the admission of the

19   defendant as to the five violations alleged in the

20   petition.

21             The Court finds that the defendant understands the

22   allegations against him and the consequences of his

23   admissions.  The Court finds that the defendant

24   understands his constitutional rights, including his right

25   to a hearing on the petition and waives them.

1          The defendant's admissions are accepted and

2     entered.  Based on the evidence presented, the Court finds

3     that the defendant has violated the conditions of

4     supervised release -- or probation in this case as alleged

5     in the probation officer's petition.

6          Mr. Pluss, have you and Mr. Wallace had an

7     opportunity to review the probation officer's report?

8          MR. PLUSS:  We have, Your Honor.

9          THE COURT:  Are there any additions or corrections

10    that you wish to make to that report?

11         MR. PLUSS:  Your Honor, there are some things that

12    I wish to say that I think pertain to the report, but I

13    will do that in terms of my talking to the Court.

14         THE COURT:  All right.  Great.  All right.

15         The Court finds, then, that these are Grade C

16    violations, and the defendant's criminal history category

17    is I, which results in a range of imprisonment of 3 to 9

18    months under the Policy Statements issued by the

19    Sentencing Commission.

20         Before imposing sentence, Mr. Pluss, you may be

21    heard.

22         MR. PLUSS:  Thank you, Your Honor.  And I would

23    like to tell the Court that I am going to be brief, but I

24    don't know that I am going to be too brief, so I just want

25    to warn the Court.

1    Mr. Wallace certainly is not the usual client I

2    necessarily find standing in this situation, nor is he --

3    are the allegations the typical allegations that I

4    typically go and excuse or attempt to excuse in front of a

5    court.

6    Usually, my clients tend to have violated by using

7    drugs, abusing alcohol, leaving halfway houses, committing

8    new crimes.  Those aren't the kinds of things that

9    Mr. Wallace finds himself in front of the Court.

10   Mr. Wallace finds himself in front of the Court for not

11   doing things as well, in terms of providing reports,

12   paying restitution, providing the probation department

13   information, that admittedly he should have done.

14   I think that prior to his having this petition

15   filed, he probably did not take his duties or his

16   obligations to the Court and to Ms. Dohanic as seriously

17   as he should have.  But I think things have changed.  And

18   I think the Court needs to look at Mr. Wallace's sort of

19   holistic situation, because there are many things in a

20   vacuum that are unique that people who come in front of

21   the Court do not have and, you know, one of which is his

22   health.

23   And I apologize to the Court, I provided to the

24   Court, as I received, a letter today through the mail.  I

25   was hoping it would be faxed to me, and that I would have

1   received it before today, but a letter from Dr. Eugene

2   Crafton in Grand Junction, Colorado, that I know the

3   probation department has been waiting for, too.

4           It is my understanding that it was also mailed to

5   them instead of faxed to them or some other electronic

6   means, to provide this information instantaneously.  And I

7   didn't receive it in the mail until this morning.  I know

8   Ms. Dohanic, I believe, has received it.  And I would, if

9   I could, like to tender it to the Court and counsel.

10          THE COURT:  You may.

11          Ms. Barnes.

12          Mr. Pluss.

13          MR. PLUSS:  Thank you, Your Honor.  And there is

14  also attached to the letter an evaluation that has been

15  done by Dr. Crafton, too, towards the end of May.

16          As this Court knows, is that Mr. Wallace received a

17  very unusual sentence originally from the Court in Los

18  Angeles, California, and a lot of it premised upon both

19  Mr. Wallace's health and the Bureau of Prisons', I guess,

20  inability to treat it.  And I know that the Court -- I am

21  sure I know the Court ordered the release of the statement

22  of reasons, and it pretty well encapsulated there what

23  Mr. Wallace suffers from and his situation.

24          I would say to the Court that -- I am not using

25  that necessarily as an excuse, but I think in terms of

1   what he goes through, it is part of the sort of stew or

2   mix as to what appears to me to be kind of a constant

3   struggle to stay ahead of things and not get behind.

4          And, first of all, he suffers from a very, very,

5   very, very rare disease.  It is a chronic disease.  It is

6   incurable.  It is not something that -- it can only be

7   controlled, it cannot be cured.  And because of that,

8   Mr. Wallace suffers every day.  Not contained in these

9   reports, but he is required to go to the bathroom 50 times

10  a day.  He is in pain.  He -- the Court could look at --

11  he suffers from edema, and sometimes he is blooded.

12  Sometimes he is not.  It kind of goes off and on, to the

13  same degree as his situation involving the Crohn's.  But,

14  even looking at his leg today, it is really sort of twice

15  the size of what it normally would be.

16         And the point being, Your Honor, is that he is

17  having to try and live, not only a normal life, he is

18  having to try and live it with a really terrible

19  affliction; an affliction that has taken 75 percent of his

20  processing part of his digestive track, over 25 percent of

21  his colon, and he is required to be under drugs and

22  prednisone and things like that every day.  And he tries

23  and has to deal with doctors every day, and to try and

24  control himself and his suffering because of this disease.

25         Now, in addition to that, Your Honor, he remarkably

1    so, frankly, maintains full-time employment.  He works as

2    a chief operating officer for -- as a developer.  He is a

3    valuable employee, doing fairly remarkable work that, in

4    and of itself, he needs to hold together in this economy.

5    He obviously lives in -- he lives in what I would say is

6    the Aspen area.  It is an area that has afforded him,

7    somebody in his position; a convicted felon, somebody with

8    his affliction, the ability to work and pay back

9    restitution to the tune of $6,000 a month.

10         He has to hold that together.  He is a father.  He

11   is a husband.  He has those obligations, that I know as a

12   father and as a husband, takes a great deal of my time, a

13   great deal of my effort.  And he has to, obviously, comply

14   with the terms and conditions of his probation and the

15   things that Ms. Dohanic wants.  He has not, obviously,

16   done them as well as everybody would like.

17         I have seen in the last 3 months, I have seen him

18   make great efforts on trying to get everything done.  And

19   it's funny, in that I find from Mr. Wallace that -- it

20   finally sort of struck me in the last couple of days,

21   because in dealing with Mr. Wallace, Mr. Wallace is very

22   good at saying that he is going to do something and plans

23   on doing it, and I believe intends to do it, and then the

24   follow through doesn't always happen.

25         And I have actually wondered the last couple of

1   days that maybe I had missed something; in that maybe he

2   suffers from some sort of mental health disorder --

3   untreated mental health disorder that contributes to it.

4   Because what I see is somebody who puts their mind at

5   wanting to complete a task, he will take great pains and,

6   frankly, overly plan and organize and write out and

7   prioritize those things, yet then the follow through, if

8   he had spent as much time organizing as doing, he would

9   easily accomplish.

10          And I'm not so sure, frankly, he does not suffer

11  from untreated OCD, or what we call obsessive compulsive

12  disorder, that I think may contribute to this.  I don't

13  have a diagnosis for the Court.  It is something that I

14  have just, I think, sort of seen on my own, or determined

15  that maybe this is what I am seeing what it is.

16          But he has -- and let me talk about the good things

17  that he has done.  And a lot of the things -- it is funny,

18  the misrepresentations to the probation department, they

19  aren't misrepresentations in terms of past conduct, like,

20  oh, no, I didn't do this, or, you know, I didn't take

21  these drugs, or, you know, I didn't go there.

22  Misrepresentations really go towards future conduct and

23  completing certain things by a certain period of time.

24          And I actually think when he makes those

25  representations, he has every intention of doing so.  And

1    it is like why today do I finally get a doctor's report?

2    I know he has been asking.  I know he has been asking the

3    doctors, but I get it three hours before this hearing.

4    And I know he has been trying.  I know he has made many,

5    many efforts to do so, but they don't get done.

6          But let's talk about some things that he has done.

7    He has -- again, I think it is remarkable that he has made

8    -- he has not made the payment in May, but he is current

9    for restitution through the month of May, to the tune of

10   $6,000 a month.  That is a significant amount of

11   restitution to be paid.

12         In May, he has not paid the restitution, and he did

13   get paid some money in April, but he had other bills.  And

14   he has provided that information to Ms. Dohanic today with

15   regard to her reporting for the month, including his rent

16   and his support of his children.

17         But he really intended that he was supposed to

18   receive from his employer moneys in the month of May, of

19   which it was his intention to pay toward restitution.

20   Those moneys did not come in.  It is my understanding in

21   talking with the -- and receiving information from his

22   employer that, in fact, he will receive a significant

23   amount of money, and that once that happens, he will then

24   become current with the month of May and the month of

25   June.

1        I do have another thing I got today, and I

2    certainly can tender it to the Court, is a letter from his

3    employer.  Again, why today?  I don't know.  But if I

4    could tender the Court a letter from his employer that

5    basically indicates that he wishes he could pay

6    Mr. Wallace more regularly.  And, obviously, Mr. Wallace

7    could then pay his restitution more regularly.  But he

8    can't.  He needs to pay him differing amounts depending on

9    how the business is doing.

10        Now, he anticipates that in the future, that in the

11    short future, actually, because there is a project that

12    Mr. Wallace is putting together in terms of being for the

13    City of Rifle, I believe, building a parking structure, a

14    green parking structure, as well as a 50-unit apartment

15    complex.  Again, they fashion themselves as "green

16    builders."  But that once this gets going, is that the pay

17    that Mr. Wallace would receive, instead of receiving a

18    lump sum, would be more regular, and he would receive

19    these in the month and that they would increase.

20        In addition, his employer writes, should

21    Mr. Wallace be incarcerated, that he does not know what he

22    is going to do.  He is probably going to have to replace

23    Mr. Wallace.  And, in doing so -- and if that happens and

24    Mr. Wallace loses his job or this employment, frankly, his

25    restitution is going to be difficult, if not impossible to

1   pay, and to obtain another job like this, especially in

2   this economy.

3          He has paid, as I understand it, $102,000 in

4   restitution so far.  And while he has -- his restitution

5   payments have not, as I said, been regular, he always does

6   seem to catch up.

7          He has, since the filing of this petition,

8   according to Ms. Dohanic's report, he has submitted his

9   reports timely.  And it is my understanding that not only

10  are his reports timely, they are incredibly detailed.  And

11  he has been spending hours and hours and hours preparing

12  these reports; showing and indicating how much income he

13  has had, what his expenses are.

14         And, frankly, again, I think that this may go to my

15  belief that he may be suffering from obsessive compulsive

16  disorder.  Frankly, I think the amount of detail that he

17  has done to prepare these reports is probably too much,

18  and that he is overcompensating for it.  But that is how

19  he does it.

20         His tax returns, again, it is funny, his tax

21  returns, he doesn't have his tax returns.  His tax returns

22  for the last 3 years have not been prepared.  The reason

23  they have not been prepared is because he apparently has a

24  very large loss carry forward from his business, which was

25  involved in the initial case in which he was charged.

1          I do have letters from his accountant, a letter to

2     Ms. Dohanic dated November 4,2009, saying, Mr. Steve

3     Yobst -- by the way, Y-O-B-S-T, CPA, located in Denver,

4     indicated he has prepared previously joint tax returns for

5     Ron Wallace and his wife Stace Wallace, and that they have

6     been prepared, and been retained to prepare his 2006, 2007

7     and 2008 federal and state income tax returns, and that

8     there are losses carried forward from tax year 2005 which

9     should offset any tax liability for 2008.

10          We have another letter from Mr. Yobst, because

11     Mr. Wallace is saying, I am waiting for, you know, my tax

12     returns.  I need my tax returns.  He writes -- Mr. Yobst

13     writes back this week, I am waiting on the data from the

14     IRS on confirmation of loss acceptance to determine if we

15     can use the loss or not.

16          Anyhow, they're not done.  But it wasn't that he

17     has them and he wouldn't turn them over.  They just were

18     not prepared.  He actually thought that he didn't need to

19     prepare them because he didn't believe, because of the

20     loss carry forward, that the -- that there would be any

21     tax owing.

22          Again, I don't think he's necessarily, you know,

23     thumbing his nose at the situation.  He has completed his

24     home confinement.  Apparently, that has been without

25     incident.  This is the whole stew that is in front of the

1  Court.  And what I am asking the Court is -- for a couple

2  of reasons, is one of two things.

3        I am asking the Court, if the Court wishes to

4  punish him, is not to incarcerate him but, rather,

5  sentence him as a condition of supervised release to

6  further home detention.  Or, in the alternative, I am

7  asking the Court to hold off this disposition hearing in

8  determining what to do with Mr. Wallace, and to continue

9  it for a period of time to let him show the Court that he

10  is worthy to pay his restitution; that he is worthy to get

11  his reports on time; that he can comply with the terms and

12  conditions.

13        I do this for a couple of reasons.  I do it because

14  I fear him losing his job and not being able to pay

15  restitution.  I ask it because I do fear for his health.

16  I do it because I do believe that he is trying, and he has

17  a whole lot on his plate.  And given all of the things

18  that he is trying to do and juggling, that while this

19  maybe has come in last, he realizes that it is to be

20  first, and that he can show the Court that he can do it.

21  That is what I am asking the Court.

22        THE COURT:  All right.  Thank you, Mr. Pluss.

23        Ms. Kaufman, do you wish to be heard?

24        MS. KAUFMAN:  Yes, thank you.  Your Honor.  I look

25  first at the violations that have been admitted today, and

1    I note that this defendant was sentenced in early 2007.

2    And that beginning in 2007, almost immediately after

3    sentencing, and then following through until the time of

4    the probation violation petition, which was the end of

5    2008, he had failed to pay restitution as ordered 16

6    times.

7         I note that he has also admitted he failed to

8    report income as required; that is immediately, in every

9    instance to the probation department, at least three

10   times.  I also note that he has failed to provide tax

11   returns, as required, sending messages as recently as a

12   day or two ago about the fact that his attorney is still

13   working on those.  It seems to me there could have been a

14   lot more communication between him and the probation

15   department about that pretty easily.

16        I clearly give less weight to the allegation that

17   he failed to make truthful statements, because I agree

18   with Mr. Pluss that the alleged false statements which are

19   now admitted relate to future acts.  And so even, you

20   know, giving him the benefit of the doubt that they are

21   more like unkept promises, there is plenty of other things

22   to talk about on his violations; namely, that he failed to

23   produce monthly reports as directed, that is five days

24   after the beginning of each month, 15 times as of December

25   2008.

1           And this is an unusual case for the Public

2    Defender, I agree, because I'm personally at a loss -- I

3    am not privy to the affidavits that the defendant files

4    for appointment of counsel paid by the public as the

5    Public Defender is, but I am at a loss as to how this

6    defendant does qualify for a public defender.

7           In any event, I note, in reviewing some of the

8    pleadings from the original sentencing and, namely, the

9    supplemental sentencing memorandum filed on December 30,

10   2007, in the United States District Court for the Central

11   District of California, Western Division, that this

12   defendant essentially begged.  He essentially begged for

13   mercy of the court in that case, and presented a very

14   strong case that he was entitled to or should receive

15   probation, because -- primarily because of his medical

16   condition.

17          And I quote from page 16 of that pleading, "the

18   sanction" -- and this his defense attorney saying this.

19   "The sanction of a lengthy house arrest, along with 5

20   years of probation, with intensive monitoring and scrutiny

21   of his finances and work, will serve the needs of the

22   protection of the public."  And I focus on the phrase

23   "with intensive monitoring and scrutiny of his finances

24   and work."

25          This is what he was begging for in 2007, and that

1      is the sentence he got.  And then what we see is almost

2      immediately after he is sentenced to that very, very

3      lenient sentence, everyone else who has committed this

4      same crime, ripping off innocent investors of over $11

5      million over a period of years, is in prison.  He got

6      straight probation.

7           And he asked for intensive monitoring and scrutiny.

8      Now he's saying, oh my goodness, he didn't understand that

9      the scrutiny and the monitoring was going to be so

10     intense.  I'm not buying that, because I see that there is

11     a clear disconnect between what this individual is capable

12     of doing, even today, in his job, as we note from the

13     letter that was received, I believe, late last night by

14     the probation department, I think at 9:41 p.m. before

15     today's hearing from his employer, that he is virtually

16     indispensable; virtually a variable dynamo as a CEO.  A

17     CEO, running a real estate business, day to day, running

18     the operations of a real estate business.  Day to day, a

19     pretty high stress job.

20          I would submit that he is doing it successfully;

21     that they have this whole housing complex in Rifle; that

22     he is spearheading the efforts.  I am quoting his boss.

23     "He is spearheading the efforts to build this housing

24     complex in Rifle, Colorado."  And now I hear there is also

25     a "green" parking area, he is spearheading.

1           Yet, somehow it is too difficult for him to

2     remember to file a report before the 5th of every month

3     with the probation department in a case in which he has

4     ripped off innocent investors of $11 million.  There is a

5     clear disconnect here.  And I disagree, and I don't claim

6     to be a psychologist or psychiatrist.  I don't claim to be

7     qualified to say that he has some other mental disability.

8     I am only looking at the facts and the evidence in this

9     case, and that is this person is an established con

10    artist.  He is clearly capable of filling out reports,

11    running a business, building a community, and yet he is

12    incapable of honestly and forthrightly fulfilling his

13    obligations to this Court and this probation department.

14          This Court and this probation department have a lot

15    better things to do with their time and resources than to

16    baby sit this man, who is perfectly capable of complying

17    with the very lenient sentence that he received.  He

18    says -- and Mr. Pluss quite eloquently stated -- he is

19    putting the best light on this, I guess, that things have

20    now changed.  Well, here is what I don't understand.  This

21    man was told in early 2007 what he had to do.  The

22    probation department worked with him until the end of

23    2008, until they filed their probation report, and

24    continued to try to work with him.

25          The hearing was originally set in this case for, I

1 believe, February. So even though Mr. Pluss wasn't on the

2 case, the defendant knew what was going on, because he had

3 received the petition. That didn't really change things.

4 Then, the sentencing hearing -- then this hearing was set

5 for April, and for legitimate reasons, it was continued

6 until today. Now we are in June.

7 Again, even though Mr. Pluss had to come up to

8 speed, this defendant is living this. This is his life.

9 He knew what his responsibilities were. So then he had

10 two more months to get his act together. And I think it

11 telling that this proceeding was even delayed. And when

12 it was delayed, the defendant came in a few minutes late

13 and provided the probation department with yet another

14 document that he should have provided a long time ago.

15 This man knows exactly what he's doing. There

16 needs to be consequences for his failure to comply, having

17 begged for mercy and gotten it. It is hard for me to

18 understand that a person who needs such ongoing medical

19 care has to present a letter the day before the hearing

20 from a doctor that he saw for the very first time last

21 week, May 28th. That letter is written by a doctor that

22 he saw for the first time May 28th.

23 Now, I don't get it, because if his condition --

24 and I am not disputing he has a condition. But it seems

25 to me this is one of those things that should be easy for

him to provide probation; an ongoing record of what his
medical conditions are, who's treating him and so on.  And
yet I notice that even when he asked for the continuance
in April, he submitted a letter by a family practitioner,
not a specialist, but a family practitioner, who he had
only seen since January of '09.

So he's constantly changing doctors, which doesn't
make sense to me.  All we are asking, all probation is
asking, is for the ability to make sure that he is no
longer committing crimes; that he is being rehabilitated,
and he is doing the best he can on probation.

He is not cooperating.  He, for example -- and,
again, I don't understand how he does this, but it is
something we would all like -- has friends that hire him
and then don't pay, but say his income is accruing,
whatever that means.  It enables him to avoid reporting
income, but yet he continues to get loans and so on from
these friends.

The problem is, under these circumstances, the
probation department and the Court cannot do its job to
assure the public that he is not still a threat -- an
economic threat to the community.  He is dealing, I am
sure, with the loss of money in this real estate endeavor.
He is not a child.  This isn't junior high.  He is not a
child.  He is not stupid.  And what he asked for today is

1    let's delay and see if he could come around.

2         Well, maybe if I had a 6-year-old in front of me I

3    would say, okay, but we don't.  We have a very competent,

4    intelligent man.  There should be a consequence.  There

5    really has to be a consequence, lest the seriousness of

6    this offense be tossed under the rug.

7         I would recommend to the Court that the Court

8    revoke this man's probation, sentence him to something

9    within the guideline range; the minimum is fine with us,

10   and then require that he serve 3 years of supervised

11   release, subsequent to the service of his sentence.

12        And if the Court has any concerns about the

13   placement of his service of sentence, I would have no

14   objection, and I think it would be appropriate to stay the

15   execution of his sentence until the probation department

16   or our office can present to the court a plan as to where

17   he would be placed, such that he can receive the drugs

18   that he requires and the treatment that he needs for the

19   short sentence.  Thank you.

20        THE COURT:  Thank you.

21        Ms. Dohanic, do you wish to be heard?

22        PROBATION OFFICER:  No, Your Honor.  I don't have

23   anything additional to give.

24        THE COURT:  All right.  Mr. Wallace, is there

25   anything that you would like to say before I impose

1    sentence?

2           THE DEFENDANT:  Yes.  First, that I am very, very

3    sorry that -- going back from the very beginning, I don't

4    want to say that I didn't understand the -- I guess I

5    didn't understand is probably not the right word for it.

6    I did not take it seriously, the scope to how the

7    reporting of my -- all of the reporting that had to be

8    done, and I definitely didn't do it the way it was

9    supposed to be done.

10          And when I finally realized the way it needed to be

11   done, I think maybe I have gone overboard.  But I now am

12   at the point where I literally report every nickel that

13   comes in and goes out, and my reports are 150, 200 pages

14   each month, because I report literally everything going

15   every which way, whatever it is, everything is totally

16   transparent.

17          And I think that originally I just -- not to say I

18   didn't realize it, I think it is more a combination of

19   things that I didn't take it seriously enough, where I

20   didn't realize the scope of it and how serious it was,

21   that it had to be on the 5th, and it also had to be very,

22   very detailed.  And I am very sorry.  When I realized the

23   scope of it, I obviously have changed that since the

24   reporting starting in December.

25          And, then, with regard to this last year, I have

1    been seeing the same group of doctors until this last 6

2    months or so.  And one of the problems I had was one of

3    the doctors -- for Ms. Dohanic -- I had asked many times

4    to give reports to her, and the reports just never

5    happened.  And the one time they did send a report, it was

6    literally one paragraph and three sentences, and that

7    particular doctor -- I dropped that doctor towards the end

8    of the year.

9          And I then -- I would just like to tell you how the

10   scope of this worked.  I got very sick this last year and

11   was put on a very high dose of prednisone, which is a

12   steroid, which has a lot of side effects, and that

13   affected me greatly this last year, just in many different

14   ways, in negative ways.

15         And I went to try to find a local physician that

16   was in Basalt, where I lived, and he was a family

17   physician who said he could handle my Crohn's Disease.

18   But then after he examined me for 8 weeks, he decided that

19   this was too much of a -- that my disease and what was

20   wrong with me was too much for him.  So he then advised I

21   have a team of doctors and put a team together.

22         So, at that point, I went to do that, and that was,

23   I believe, when there was a continuance done.  So this

24   last 8 weeks or 10 weeks, I have spent literally a

25   full-time job between my regular job and a full-time job

1    with the medical, of seeing doctors, being tested.  So now

2    I have a team of fabulous doctors that have done wonderful

3    things for me.

4         My health has improved greatly in the last 8 weeks.

5    And the most recent doctor, this letter that you received

6    today, he is part of a team that is real close to one of

7    the other doctors, the hematologist that I am seeing, and

8    it is going really well.  And I am really, really happy.

9    And it has made a huge difference for me.

10        And I would like to say also, regarding my work, I

11   work as the COO of this company, which I am the operations

12   person.  I don't handle any finances, anything to do with

13   money.  And so I don't want to construe that I do, because

14   that is my job is to take care of the operations of the

15   company.  And I work a lot on the computer and a lot on

16   the phone.  So that affords me the ability that, with this

17   disease, I can work out of an office a tremendous amount,

18   which is fortunate for me, because lots of times I have to

19   stay at home.

20        So, with regard to Ms. Dohanic, she has been

21   wonderful.  I mean, she has been -- I can't say but great

22   things.  And she has worked with me.  And I know that I

23   have been the problem.  And I am the one who has been the

24   issue here.  And she has gone out of her way to be

25   helpful.  And I hopefully have changed my ways, in the

1    sense that my reporting and going out of my way to be very

2    transparent with everything.

3         I have tried to do everything I can to make things

4    work.  And I am just asking if you could let me continue

5    to go like I have been doing this last, you know, 4 or 5

6    months.  My health is improving greatly right now.  They

7    wanted to put me on these new drugs that are very, very

8    expensive; 3- or $4,000 a month, which insurance pays for,

9    but it is very expensive.  But they work.  And I am just

10   really excited to be able to do all of these things.  And

11   I haven't felt this good in the last 12 months that I felt

12   in the last week and a half.

13        So that's about it.  I just wanted to kind of give

14   you an update of where I am, and just everything about all

15   of this.  And Ms. Dohanic has been very helpful to me.

16   And she has gone out of the way to make my situation with

17   everything.  She has been super helpful.  And it has been

18   my fault for the things that have happened.  Where, you

19   know, the lack of reporting and that sort of thing, she

20   has -- fortunately, she has showed me exactly what had to

21   be done, and now I am finally doing it exactly the way it

22   is supposed to be done.  So --

23        THE COURT:  Okay.  Thank you.

24        Is there any reason why the Court should not

25   proceed with the imposition of sentence?

1        MR. PLUSS:  No, Your Honor.  Would you like us to

2    stay up here?

3        THE COURT:  If you would remain standing.

4        The Court, having asked the defendant if there is

5    any reason why sentence should not now be pronounced, and

6    no cause to the contrary appearing; the defendant and his

7    attorney, having made a statement on his behalf; the

8    Court, having reviewed the recommendations of the

9    probation officer and having heard the argument of

10   Ms. Kaufman, and having considered the Chapter 7 Policy

11   Statements in the Sentencing Guidelines, as well as the

12   factors specified in U.S.C. Section 3583(e), the Court

13   finds based on the evidence presented that the defendant

14   has violated the conditions of supervised release as

15   alleged in the probation officer's petition.

16       It is therefore ordered and adjudged that the

17   defendant's probation is revoked, and the defendant is

18   sentenced to the custody of the Bureau of Prisons for a

19   period of 3 months on each of Counts 4, 5, 6, 11, 12, 15

20   and 20, to run concurrently, and which will be followed by

21   a term of supervised release of 3 years on each of those

22   counts, to run concurrently.

23       The defendant is ordered to pay the balance of the

24   restitution currently outstanding.  Upon release from

25   imprisonment, the defendant shall be placed on supervised

1    release for a period of 3 years.  Within 72 hours of

2    release from the custody of the Bureau of Prisons, the

3    defendant shall report in person to the probation office

4    in the district to which the defendant is released.

5          While on supervised release, the defendant shall

6    not commit another federal, state or local crime; shall

7    not illegally possess controlled substances; shall not

8    possess a firearm or destructive device; and shall comply

9    with the standard conditions as adopted by the Court.

10         The defendant shall refrain from the unlawful use

11   of a controlled substance and submit to one drug test

12   within 15 days of release on supervised release, and at

13   least two periodic drug tests thereafter for use of a

14   controlled substance.  The defendant is ordered to

15   continue making his monthly restitution payments in

16   accordance with the schedule of payment sheet set forth in

17   the original judgment.

18         The Court waives the mandatory drug testing

19   provisions of 18 U.S.C. Section 3583(e), except as

20   otherwise previously stated.

21         The defendant shall not incur new credit card

22   charges or open any lines of credit without the approval

23   of the probation officer unless the defendant is in

24   compliance with the periodic payment obligations imposed

25   pursuant to the Court's judgment and sentence.

1    The defendant shall be employed, and the
2    defendant's employment shall be approved by the U.S.
3    Probation Officer.  Upon receipt of any funds received by
4    the defendant or his immediate family or any entities
5    controlled by or affiliated with the defendant as a result
6    of the defendant's work activities or the sale of any of
7    the defendant's assets in excess of his monthly salary,
8    the defendant shall give notice not later than 24 hours
9    after receipt of such funds to his supervising probation
10   officer, and shall not dispense such funds within 30 days
11   of their receipt without approval of his supervising
12   United States Probation Officer.

13   The defendant is prohibited from employment where
14   he would solicit funds or employment which would permit
15   him to have control over investment funds, to have custody
16   of investment funds or investor funds, and may not be a
17   signatory on such accounts if these are investor fund
18   accounts.

19   The defendant is required to report to the United
20   States Probation Officer monthly all salary, income,
21   interest, dividends, profits, bonuses or other moneys that
22   the defendant should receive or his family should receive.
23   The defendant shall provide the probation officer with
24   access to any and all business records, client lists and
25   other records pertaining to the operation of any business

1    owned in whole or in part by the defendant, as directed by

2    the probation officer.

3          The defendant shall provide to the probation

4    officer a signed release authorizing credit reporting

5    queries, federal and state income tax returns, or a signed

6    release authorizing their disclosure, and an accurate

7    financial statements with supporting documentation as to

8    all assets, income and expenses of the defendant.

9          In addition, the defendant shall not apply for any

10    loan without prior approval of the probation officer.  The

11    defendant shall maintain one personal checking account.

12    All of the defendant's income, monetary gains or other

13    pecuniary receipts shall be deposited into this account,

14    which shall be used for payment of all personal expenses.

15    Records of all other bank accounts, including any business

16    accounts, shall be disclosed to the probation officer upon

17    request.

18          The defendant shall not transfer, sell, give away

19    or otherwise convey any asset with a fair market value in

20    excess of $500 without approval by the probation officer

21    until all financial obligations imposed by the Court have

22    been satisfied in full.

23          Mr. Wallace, you don't seem to appreciate how

24    fortunate you were that instead of being sent to prison

25    for the 70 to 87 months calculated under the Sentencing

1    Guidelines for charges you were found guilty of, the judge

2    in your case sentenced you to only 2 years of home

3    confinement and 5 years of probation.

4         However, your probation was subject to certain

5    terms and conditions that you seem to think are

6    discretionary on your part, despite the fact that you were

7    told that your violation of any conditions of your

8    probation could result in revocation of probation and

9    imprisonment.

10        You have basically been non-compliant with your

11   probation since supervision commenced in February of 2007.

12   You failed to submit timely monthly reports to the

13   probation officer, along with accurate and complete

14   financial information.  When your probation officer asked

15   you to provide information regarding your financial

16   status, you just ignored her, provided the information

17   when you felt like it, and even then provided incomplete

18   information.

19        You have a financial obligation to pay restitution

20   as ordered by the Court in the amount of 6,000 per month,

21   which you failed to pay as ordered.  The probation officer

22   gave you the opportunity to provide documentation to see

23   if an adjustment should be made to your monthly

24   restitution payment, and you failed to provide her the

25   requested documentation.

         1          You have demonstrated your unwillingness to comply

         2     with your conditions of probation, and you have left me

         3     with no choice but to revoke your probation and sentence

         4     you to a 3-month term of imprisonment, and that is why.  I

         5     considered imprisoning you for a longer term.

         6          And although this recommended sentence is at the

         7     bottom of the advisory guideline range, it should be noted

         8     that based on your repeated violations of the terms of

         9     probation, I could have imposed a term of imprisonment of

        10     up to 5 years on each of several of those counts, and 10

        11     years on one of those counts and 20 years on one of the

        12     other counts.

        13          Nonetheless, although you have breached the trust

        14     of the court that was placed in you by repeatedly

        15     violating the conditions of probation, I'm hoping that 3

        16     months' incarceration will be enough.  I believe 3 months

        17     is appropriate under the Sentencing Guidelines considering

        18     the seriousness of the violation and your prior criminal

        19     history.  I am hoping that it will be enough to get you to

        20     comply with the terms of your supervised release at this

        21     point.

        22          I am going to assume that you are a quick study,

        23     because you wouldn't have the job you had if you weren't,

        24     and that 3 months will promote rehabilitation, and that

        25     you will comply and comply timely and fully with the terms

1    of supervised release that I have imposed.  Because I will

2    tell you right now, Mr. Wallace, if there is a next time,

3    if you do not comply, and you find yourself before this

4    Court again for failure to comply with the terms of

5    supervised release that I have imposed, I will not be

6    lenient in sentencing.

7         You are advised that you have the right to appeal

8    this sentence.  If you desire to appeal, a notice of

9    appeal must be filed with the Clerk of the Court within 10

10   days after entry of judgment or the right to appeal will

11   be lost.  If you are unable to afford an attorney for an

12   appeal, the Court will appoint one to represent you.  If

13   you request, the Clerk of the Court must immediately

14   prepare and file a notice of appeal on your behalf.

15        The Court finds that the defendant is not likely to

16   flee or to pose a danger to the safety of another person

17   or the community.  It is ordered that the defendant,

18   Ronald Philip Wallace, surrender to the United States

19   Marshal for the District of Colorado on July 7, 2009, at

20   12:00 noon.

21        One last matter.  Because Mr. Wallace has failed to

22   provide the probation officer with all of the financial

23   information requested, the Court was unable to determine

24   whether Mr. Wallace was, indeed, eligible for -- was

25   indeed eligible or qualified for a court-appointed

1   counsel.

2        And I agree with Ms. Kaufman, this struck me as

3   very odd that you would have a Federal Public Defender

4   appointed.  In your Affidavit you list $1,197.38 for

5   Public Service.  $1,058.72 for a telephone.  $1,929.62 for

6   food and groceries.  $616.87 for clothes, all for a

7   one-month period in December of 2008.  That does not

8   appear to be for the necessities of life, which is what

9   the statute requires.

10       Therefore, the Court is reserving jurisdiction to

11  address whether or not the Court should order Mr. Wallace

12  to reimburse all or part of the cost of his

13  court-appointed representation.

14       After Mr. Wallace has complied with the terms of

15  his supervised release and the reporting and has submitted

16  all of the financial information, Ms. Kaufman and

17  Ms. Dohanic, I request that you submit to this Court a

18  report summarizing Mr. Wallace's financial status with

19  sufficient specificity to allow me to make a final

20  determination concerning whether the defendant has funds

21  available to pay some or all of the cost of

22  representation, and whether or not Mr. Wallace should be

23  ordered to reimburse the Criminal Justice Act

24  appropriation for such costs.

25       Is there any other business to be brought before

1    the Court?

2            MS. KAUFMAN:  No, thank you, Your Honor.

3            MR. PLUSS:  Your Honor, I would respectfully

4    request that the Court make a recommendation to the Bureau

5    of Prisons that Mr. Wallace serve his sentence in a

6    medical facility.

7            THE COURT:  I have not been provided with

8    sufficient medical evidence to justify my doing that.  I

9    guess if you want to submit to me some medical evidence

10   that actually does indicate, and it is not a last-minute

11   letter of two or three paragraphs, I might consider that.

12   If you want to file something, I will take it into

13   consideration.  As of this point, I have not seen

14   substantial medical evidence for me to do that.

15           Anything further?

16           MS. KAUFMAN:  No, thank you.

17           THE COURT:  All right.  Court will be adjourned.

18           (Proceedings conclude at 2:33 p.m.)

19

20

21

22

23

24

25

1

2          **R E P O R T E R ' S     C E R T I F I C A T E**

3

4          I, Darlene M. Martinez, Official Certified

5    shorthand Reporter for the United States District Court,

6    District of Colorado, do hereby certify that the foregoing

7    is a true and accurate transcript of the proceedings had

8    as taken stenographically by me at the time and place

9    aforementioned.

10

11          Dated this <u>23rd</u> day of <u>May</u>, 2012.

12

13          _____

14          s/Darlene M. Martinez

15          RMR, CRR

16

17

18

19

20

21

22

23

24

25